# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

NATHANIEL WHALEY,

        **Plaintiff,**

    **v.**                                  **Case No.   05-C-0898**

PETER ERICKSEN, CAPTAIN LAURIE L. LAURENT,
SERGEANT WAYNE J. LAUFENBERG,
JEANNANNE HERTEL GREENWOOD, NURSE JANE DOE
and SERGEANT THOMAS J. CAMPBELL,

        **Defendants.**

---

# DECISION AND ORDER

---

        Plaintiff, Nathaniel Whaley, filed this *pro se* civil rights action pursuant to 42 U.S.C § 1983 and is proceeding *in forma pauperis* on various claims. Currently pending is the defendants' motion for extension of time and the defendants' motion for summary judgment. Both applications will be addressed herein.

## I. DEFENDANTS' MOTION FOR EXTENSION OF TIME

        The defendants have requested an extension of time in which to file a reply. Fed.R.Civ.P. 6(b) states in relevant part,

> When an act may or must be done within a specified time, the court may, for good cause, extend the time with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires, or on motion made after the time has expired if the party failed to act because of excusable neglect.

In the present case, counsel for the defendants states that it was necessary to file a late reply due to her demanding caseload. The court is satisfied that the reason underlying the request justifies an extension of time. Accordingly, the defendants' motion will be granted and their reply will be considered as timely filed.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On August 19, 2005, the plaintiff filed a § 1983 complaint against defendants Daniel Bertrand, Peter Ericksen, Glen Ripley, Captain Laurie L. Laurent, Sergeant Wayne J. Laufenburg, Cynthia Thorpe, Jeananne Hertel Greenwood, Nurse Jane Doe and Sergeant Thomas J. Campbell. On February 16, 2006, the court screened the complaint and permitted the plaintiff to proceed on claims that the defendants violated his rights under the Eighth Amendment when they denied him adequate medical care and failed to protect him from harm by another inmate. That same date, defendants Bertrand, Ripley and Thorpe were dismissed.

The defendants filed a motion for summary judgment on November 30, 2006. The plaintiff was given an extension of time until February 8, 2007, in which to respond. Instead of filing a response, the plaintiff filed a motion for extension of time in which to conduct discovery, which was denied on April 16, 2007.

Thereafter, the plaintiff filed an interlocutory appeal to the Court of Appeals for the Seventh Circuit, which was dismissed on October 1, 2007. The record was then returned to this court and the plaintiff was directed to respond to the defendants' motion.

2

The plaintiff filed his response on November 7, 2007. Thus, the defendants' motion is fully briefed and ready for resolution.

## A.    Summary Judgment Standard

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id*.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson,* 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id*. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing

3

out the absence of evidence. *Id*. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id*. at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

## B.    Preliminary Matters

Along with their motion for summary judgment, the defendants have submitted eighty-six proposed findings of fact. On November 11, 2007, the plaintiff filed a document which purports to respond to these findings of fact. However, review of the plaintiff's response reveals that it is deficient for several reasons.

Under Civil Local Rule 56.2(b)(1) (E.D. Wis.), any materials filed in opposition to a summary judgment motion must include "[a] specific response to the movant's proposed findings of fact...that refer[s] to the contested finding by paragraph number and include[s] specific citations to evidentiary materials in the record which support

4

the claim that a dispute exists." In deciding a motion for summary judgment, the court must conclude that there is no genuine issue of material fact as to any proposed finding of fact to which no response is set out. *Id.*

In the present case, the plaintiff disputes many of the defendants' proposed findings of fact. However, in several of his responses, the plaintiff has not cited to evidence that supports his claim that a dispute exists. The plaintiff also states that he cannot agree or disagree with numerous proposed findings of fact that concern the defendants' involvement in the alleged wrongdoing. However, the information set forth in these proposed findings is of the type that the plaintiff should be able to respond to. In light of the foregoing, the court will consider as admitted any responses to the defendants' proposed findings of fact that fail to comply with Rule 56.2(b)(1).

**C.     Relevant Undisputed Facts** [1]

The plaintiff, a Wisconsin state prisoner, was incarcerated at Green Bay Correctional Institution (GBCI) at all times relevant. The defendants are all employed at GBCI.

Defendant Laurie Laurent is employed as a Supervising Officer 2, or Captain, at GBCI. (Affidavit of Laurie L. Laurent [Laurent Aff.] ¶ 1). Defendant Thomas Campbell is employed as a Correctional Sergeant at GBCI. (Affidavit of Thomas J. Campbell

---

[1]The facts in this section are derived from the plaintiff's verified complaint and affidavit, to the extent they are undisputed, and the defendants' affidavits and proposed findings of fact, to the extent they are undisputed. *See* Civil L.R. 56.2 (E.D. Wis.).

5

[Campbell Aff.] ¶1). Defendant Peter Ericksen is employed as the Security Director of GBCI. (Affidavit of Peter Ericksen [Ericksen Aff.] ¶ 1). Defendant Jeananne Hertel Greenwood (formerly known as Jeananne Hertel) is employed as the Health Services Unit (HSU) Nursing Supervisor at GBCI. (Affidavit of Jeananne Greenwood [Greenwood Aff.] ¶ 1). Defendant Wayne Laufenberg is employed as a Correctional Sergeant at GBCI. (Affidavit of Wayne J. Laufenberg [Laufenberg Aff.] ¶ 1).

The plaintiff arrived at GBCI in 1995 and remained employed there until 2003, when defendant Bertrand instituted a new policy prohibiting an inmate from remaining at any one job for more than two years. (Compl. at 2-3). On November 20, 2003, the plaintiff was moved from his work assignment in recreation and was placed on institutional needs, or "I needs." (Ericksen Aff. ¶ 5). An inmate is placed on I needs when he is unemployed but waiting for job placement. (Ericksen Aff. ¶ 6). Inmates on I needs are generally double-celled. (Ericksen Aff. ¶ 8).

On November 7 and 23, 2004, the plaintiff sent an interview information request form to defendant Ericksen requesting that he be moved from his cell. (Pl.'s Ex. 4). On the form, the plaintiff stated that he was doing his "best to stay out of trouble, and complete my program, yet I keep getting housed with inmates refusing their medication and wanting to fight, could you please consider me for a single cell." *Id*.

Housing assignments are an administrative decision and a function of security. (Ericksen Aff. ¶ 18). The institution must have the capability to manage its cells and inmates

6

according to the best interests of the institution and the population as a whole. (Ericksen Aff. ¶ 17). The environment within a correctional institution is not ideal as it houses some of the most boisterous and disobedient individuals. *Id.*

If an inmate is being harmed, or feels that he is at risk of being harmed by his cell mate, he can contact the unit sergeant. (Ericksen Aff. ¶ 19). Unit sergeants have the authority to move inmates, so if there is credible evidence of harm, the unit sergeant can move the inmate to a different cell. (Ericksen Aff. ¶ 20). If the unit sergeant refuses to move an inmate, the inmate may ask for a lieutenant or captain. (Ericksen Aff. ¶ 21). The inmate may also write to the security director and request an SPN. (Ericksen Aff. ¶ 22). The security director will then have the matter investigated, and if the inmate's claims are found to be credible, he will order the inmate moved or a SPN will be issued. *Id.*

### Events of November 16, 2004

On November 16, 2004, inmate Carson was moved into the plaintiff's cell. (Ericksen Aff. ¶ 9; Campbell Aff. ¶ 5; Laufenberg Aff. ¶ 5). When placing an inmate in a cell with another inmate, staff looks to see if either inmate has Special Placement Needs (SPN), meaning that they are not to be housed with or near other inmates or types of inmates. (Ericksen Aff. ¶ 10; Campbell Aff. ¶ 6; Laufenberg Aff. ¶ 6). Inmate Carson did not have an SPN preventing him from sharing a cell with the plaintiff. (Ericksen Aff. ¶ 11; Campbell Aff. ¶ 8; Laufenberg Aff. ¶ 8). Moreover, of the twenty-three conduct reports that inmate

7

Carson received between January 2, 2003, and November 16, 2004, when he moved into the plaintiff's cell, only one was for fighting. (Ray Aff. ¶ 6).

At the time of a move, an inmate may tell the staff he does not want to be housed with his prospective cell mate. (Campbell Aff. ¶ 7; Laufenberg Aff. ¶ 7). Inmate requests for cell changes are ongoing, daily occurrences. (Campbell Aff. ¶ 11; Laufenberg Aff. ¶ 12). Therefore, it is the practice of defendants Laufenberg and Campbell to inform the requesting inmate that if he would like a cell change that he should follow the chain of command in making a cell change request. *Id.* Simply because an inmate does not like his cellmate is not reason enough to place that person in a single cell or move him to another cell. (Ericksen Aff. ¶ 16).

After inmate Carlson was moved into the plaintiff's cell, the plaintiff asked defendant Laufenberg to transfer him because he did not get along with inmate Carson. (Compl. at 3). It is not defendant Laufenberg's policy to move inmates unless he is ordered to. (Laufenberg Aff. ¶ 12). Therefore, he seldom moves an inmate based on inmate requests unless there is credible evidence of harm to one or both of the inmates. *Id.*

**Events of December 15, 2004**

On December 15, 2004, at approximately 2:20a.m., staff on the North Cell Hall heard a commotion coming from the area near the plaintiff's cell. (Laurent Aff. ¶¶ 4, 5). Officer Shane Willemon arrived at the plaintiff's cell, shined a flashlight inside and noticed

8

that the contents of the cell were in disarray and that the plaintiff was kneeling on the floor and appeared to be grabbing something from under his bed. (Laurent Aff. ¶ 6).

Defendant Laurent was then notified that there was a fight in the plaintif's cell. (Laurent Aff. ¶7). The plaintiff informed Officer Willemon that inmate Carson threw hot water on him. (Laurent Aff. ¶ 8). The plaintiff then proceeded to try and grab something from under the bed. *Id.* Officer Willemon ordered the plaintiff to stop and to go to the back of the cell. *Id.* When asked where inmate Carson was, the plaintiff responded that he was under the bed. (Laurent Aff. ¶ 9).

The plaintiff was then ordered to come to the cell door. (Laurent Aff. ¶ 10). When he arrived at the cell door, staff noticed that the plaintiff's shirt was torn and that skin on the side of his face and on his upper chest that was starting to blister. *Id.*

For the safety of other inmates and staff, the plaintiff was placed in wrist restraints and told to step to the back of the cell. (Laurent Aff. ¶ 13). The plaintiff complied. *Id.* However, when staff attempted to get inmate Carson to come out from under the bed, the plaintiff tried to stomp on him. (Laurent Aff. ¶ 14). The plaintiff was ordered to return to the back of his cell, which he eventually did. (Laurent Aff. ¶ 15). Inmate Carson was placed in wrist restraints and escorted to segregation, where he was placed on temporary lock up. (Laurent Aff. ¶ 16).

The plaintiff was removed from his cell and escorted to the Rotunda, where defendant Laurent called the on-call nurse at home because there was no nurse on duty.

9

(Laurent Aff. ¶ 17). The plaintiff was then taken to segregation and placed in temporary lock up. *Id.* Once in segregation, the plaintiff was strip searched. (Laurent Aff. ¶ 25).[2] After he removed his shirt, the plaintiff saw blisters and peeling skin on his face, neck, chest and stomach. (Compl. at 5). The plaintiff then asked to have defendant Laurent come and look at his injuries. *Id.*

Defendant Laurent came to see the plaintiff's injuries. (Laurent Aff. ¶ 19). At that time, defendant Laurent did not see blisters on the plaintiff's body. *Id.* However, defendant Laurent observed that the plaintiff's shirt was torn and wet. *Id.*

Defendant Laurent proceeded to call the nurse again. (Laurent Aff. ¶ 20). Defendant Laurent informed the nurse that the plaintiff had been injured and that he had a reddened area on his chest and possible blistering. *Id.* The nurse instructed defendant Laurent to give the plaintiff cool towels and aspirin. (Laurent Aff. ¶ 21).

At 6:00a.m., the plaintiff was seen by a nurse, who gave him creme, and said that the doctor would give him something for pain when he arrived. (Compl. at 6). Then, at approximately 8:00a.m., the plaintiff saw the doctor, who pulled the blistered skin from his neck, chest, stomach and leg. *Id.* The doctor also applied creme and bandages and gave the plaintiff something for pain. *Id.* The plaintiff was then admitted to the prison hospital. *Id.*

---

[2]When inmates enter segregation, they are strip searched to make sure that they are not concealing any contraband or property not allowed in segregation. (Laurent Aff. ¶ 25).

10

**D.    Analysis**

The defendants contend that they are entitled to summary judgment for three reasons.   First, the defendants aver that they provided the plaintiff with adequate medical care.  Second, they state that they did not fail to protect the plaintiff from harm by another inmate.  Finally, the defendants submit that they are entitled to qualified immunity.

**1.    Failure to Protect Claims**

The plaintiff alleges that defendants Ericksen, Campbell and Laufenberg failed to protect him from inmate Carson, despite making complaints that he feared for his safety. The Eighth Amendment's Cruel and Unusual Punishment Clause imposes upon prison officials the duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  This duty requires prison officials "to protect prisoners from violence at the hands of other prisoners."  *Id*. at 833 (internal quotations omitted).   In order to prove deliberate indifference, the plaintiff must show that the defendants were "aware of a substantial risk of serious injury to the plaintiff but nonetheless failed to take appropriate steps to protect him from a known danger."  *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007)(citing *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)).

Proving that the defendants were deliberately indifferent to the plaintiff's safety requires "more than a showing of negligent or even grossly negligent behavior."  *Fisher v. Lovejoy,* 414 F.3d 659, 662 (7th Cir. 2005).  Conduct that simply amounts to mere negligence

11

or inadvertence is insufficient to justify the imposition of liability. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). "Instead, in order to infer callous indifference when an official fails to protect a prisoner from the risk of attack, there must be a strong likelihood rather than a mere possibility that violence will occur." *Id.* (internal quotation marks omitted).

The first prong of a failure to protect claim requires a plaintiff to prove that "he is incarcerated under conditions posing a substantial risk of serious harm." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005)(internal quotes omitted). To satisfy this prong, the plaintiff must show not only that he experienced "a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur." *Id*. The substantial risk standard is very high; the Seventh Circuit has suggested that it exists "where prison officials place a detainee in a cell in which they know that there is a cobra there or at least that there is a high probability of a cobra there." *Billman v. Ind. Dep't of Corrs.*, 56 F.3d 785, 788 (7th Cir. 1995). Substantial risk can also include risks attributable to prisoners with known propensities of violence toward a particular individual or class of individuals, to highly probable attacks and to particular prisoners who pose a heightened risk of assault to the plaintiff. *Brown*, 398 F.3d at 911.

12

Here, the parties do not dispute that the plaintiff suffered a serious injury when he was burned by hot water.[3]  Therefore, the relevant inquiries are: (1) whether placing inmate Carson in the plaintiff's cell created a substantial risk of the serious injury; and (2) whether the defendants were aware of this risk but failed to take appropriate action to prevent it from occurring.  *See Guzman,* 495 F.3d at 857.

**Defendant Ericksen**

The plaintiff alleges that defendant Ericksen knew that housing him in the same cell with inmate Carson posed a substantial risk of serious injury because the plaintiff contacted Ericksen in writing to complain about his cell mate.  It is undisputed that defendant Ericksen received an interview and information request form from the plaintiff on November 7 and November 23, 2004.  (*See* Pl.'s Ex. 4).  In his correspondence to Ericksen, the plaintiff complained that he was "doing his best to stay out of trouble, and complete my program, yet I keep getting housed with inmates refusing their medication and wanting to fight[.]" *Id.*

Although the plaintiff's exhibits demonstrate that he informed defendant Ericksen that he was concerned about his cell mates in general, they do not prove that Ericksen knew that housing him with inmate Carson posed a substantial risk of serious injury.  Indeed, at the time the November 7, 2004, form was filed, the plaintiff was not sharing a cell with inmate Carson.  Moreover, the November 23, 2004, complaint made only

---

[3]The court notes that the plaintiff did not authorize the release of his medical records to the defendants during the discovery.  Therefore, the defendants filed their motion for summary judgment without the benefit of such records.

13

a general assertion that several of the plaintiff's cell mates stopped taking their medication and wanted to fight.

In *Butera*, 285 F.3d at 606, the Seventh Circuit held that where a plaintiff failed to specifically seek protection from the allegedly threatening inmate and failed to disclose the nature of the threats made against him, he could not prove that prison officials were aware of the substantial risk of serious injury to him. Inasmuch as the plaintiff in the present case admittedly did not relay this type of information in his November 7 and November 23, 2004, information request forms, he failed to sufficiently notify defendant Ericksen that housing him in a cell with inmate Carson posed a substantial risk of serious injury.

Next, the plaintiff asserts that defendant Ericksen was aware that putting him and inmate Carson in the same cell posed a substantial risk of serious injury because Carson had a propensity for violence. As grounds for this assertion, the plaintiff states that he previously refused to share a cell with inmate Carson because of his violent reputation. However, the plaintiff has submitted no admissible evidence to support his claim. Although the plaintiff has provided a copy of the conduct report that he received on February 24, 2001, it does not prove that he refused to be housed with inmate Carson because he feared for his safety. (*See* Pl.'s Ex. 3). Rather, the conduct report demonstrates that the plaintiff refused to share a cell with an unidentified inmate because he thought the inmate was homosexual. *Id*.

14

At summary judgment, the plaintiff is required to submit what proof he has to support his claims. *Koszola v. Bd. of Ed.*, 385 F.3d 1104, 1111 (7th Cir. 2004)("the Seventh Circuit has identified summary judgment as the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."). Inasmuch as the plaintiff has failed to provide any evidence that inmate Carson had a propensity for violence, the court is not persuaded that a substantial risk can be inferred from Carson's past conduct. *See Brown*, 398 F.3d at 911.

In light of the foregoing, the plaintiff has failed to show that defendant Ericksen was aware that requiring him share a cell with inmate Carson posed a substantial risk of serious injury. Therefore, defendant Ericksen is entitled to summary judgment on this claim.

### Defendant Campbell

The plaintiff asserts that defendant Campbell knew that housing him in the same cell with inmate Carson posed a substantial risk of serious injury because the plaintiff contacted Campbell in person to complain about his cell mate. Although defendant Campbell acknowledges that he may have spoken with the plaintiff about his problems, the parties are in dispute as to the nature of this conversation.

For his part, the plaintiff contends that he informed defendant Campbell that inmate Carson made threats, refused to take his medication and called the plaintiff a snitch. He avers that Campbell said that he would come to the plaintiff's cell after dinner, but he

15

never did.

On the other hand, defendant Campbell states that he does not remember speaking to the plaintiff about inmate Carson on December 14, 2004. Campbell also states that if he had talked to the plaintiff, it is unlikely that he would have promised to come to his cell because Campbell stays on the floor to supervise other inmates.

At summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a fact finder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). And, in resolving a motion for summary judgment, all inferences are to be drawn in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587. Based on this, the court will accept as true the plaintiff's assertion that he complained about inmate Carson to defendant Campbell on December 14, 2004. However, assuming that defendant Campbell knew that inmate Carson had stopped taking his medication, was making threats and calling the plaintiff a snitch, the plaintiff has not shown that Campbell was aware of a substantial risk of serious injury and chose to disregard it.

As discussed, *supra*, a substantial risk is presented where prison officials place an inmate in a cell in which they know that he will be seriously injured, or at least that there is a high probability of him being seriously injured. *See Billman,* 56 F.3d at 788. By his own admission, the plaintiff did not tell defendant Campbell that inmate Carson harmed him or threatened to harm him on December 14, 2004. And, the plaintiff did not indicate that he

16

feared for his safety. At most, the plaintiff informed Campbell that inmate Carson was behaving in an erratic manner.

To the extent the plaintiff argues that defendant Campbell should have conducted additional investigation to determine whether inmate Carson was a danger to himself or to the plaintiff, his allegation amounts to one of negligence. However, negligence does not suffice to impose § 1983 liability. To wit, "[n]egligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (internal citations omitted). Liability does not attach even if a defendant is incompetent, *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000), or unreasonable, *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). This total disregard of a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 744 F.2d 344, 347 (7th Cir. 1991).

For the foregoing reasons, the plaintiff has failed to show that defendant Campbell was aware that placing him and inmate Carson in the same cell posed a substantial risk of serious injury. Therefore, defendant Campbell is entitled to summary judgment on this claim.

17

**Defendant Laufenberg**

The plaintiff alleges that defendant Laufenberg was aware that housing him in the same cell as inmate Carson posed a substantial risk of serious injury because the plaintiff expressed his dissatisfaction with his living arrangements to Laufenberg. It is undisputed that on November 17, 2004, the plaintiff and defendant Laufenberg discussed the plaintiff's housing assignment. However, the parties disagree as to what transpired during this conversation.

For his part, the plaintiff states that he told defendant Laufenberg that inmate Carson was a trouble maker, that the plaintiff could not afford to get into trouble and that he did not wish to be housed with inmate Carson. The plaintiff avers that defendant Laufenberg told him to "deal with it."

According to defendant Laufenberg, the plaintiff stated that he had problems getting along with inmate Carson. However, the plaintiff did not indicate that he had been in any altercations with inmate Carson or that he felt that his safety was put at risk by remaining in the same cell as inmate Carson. Instead of telling the plaintiff to "deal with it," defendant Laufenberg submits that he advised the plaintiff to be part of the solution and to try and get along.

As discussed, summary judgment should not be used to make credibility determinations and all inferences should be drawn in the plaintiff's favor. *See Payne,* 337 F.3d at 770. Thus, the court will accept as true the plaintiff's averment that he complained

18

about his cell assignment to defendant Laufenberg. However, even accepting this version of the events, the plaintiff has not demonstrated that defendant Campbell was aware of a substantial risk of serious harm and consciously disregarded it nonetheless. *See Pierson,* 391 F.3d at 902.

In the present case, the plaintiff asserts that he told defendant Laufenberg about inmate Carson being a trouble maker and that he, the plaintiff, did not want to get into trouble. The plaintiff did not claim that he feared for his safety or that he believed he would be attacked. And, the plaintiff does not suggest that he provided defendant Laufenberg with any information beyond the November 17, 2004, discussion. The court is not persuaded that from this sole, limited, conversation defendant Laufenberg knew that the plaintiff's cell assignment exposed him to a substantial risk of serious injury. And *See Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996)(affirming grant of summary judgment for warden on claims of deliberate indifference and excessive force where the inmate argued that she sent warden a letter recounting the underlying facts but did "not supply in her description of the purported letter any details to permit the conclusion that the letter sufficiently advised the warden of the situation to require personal intervention."). Thus, defendant Laufenberg is entitled to summary judgment on this claim.

## 2.     Medical Care Claims

The plaintiff alleges that defendants Laurent, Greenwood and Jane Doe provided him with inadequate medical care after inmate Carson burned him with hot water.

19

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (*quoting Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez*, 111 F.3d at 1373 (citations omitted).

In the present case, the plaintiff did not authorize the release of his medical records to the defendants prior to their filing a motion for summary judgment.[4] However, it is undisputed that inmate Carson threw hot water on the plaintiff, which caused blistering on his head, neck, chest, arms and leg. The plaintiff was treated by a nurse and a doctor, who

---

[4]
      Although it is unclear, the plaintiff may have refused to release his medical records due his constitutional interest in protecting such records. *See Whalen v. Roe*, 429 U.S. 589 (1977). However, he waived this interest when he filed suit alleging that he was denied medical care. *See, e.g., Doe v. Marsh*, 918 F. Supp. 580, 585 (N.D.N.Y. 1996); *Ferrell v. Glen-Gery Brick*, 678 F. Supp. 111, 112 (E.D.Pa. 1987)("both courts and commentators alike have consistently taken the view that when a party places his or her physical or mental condition in issue, the privacy right is waived."); *Felder v. Wyman*, 139 F.R.D. 85, 88 (D.S.C. 1991)(where plaintiff filed lawsuit challenging the decedent's quality of medical care, any privilege with respect to decedent's medical condition was waived).

gave him cool towels, creme and pain reliever and he was admitted to the prison hospital. Therefore, the court finds that the plaintiff experienced a serious medical need. *See Wynn*, 251 F.3d at 593 (a serious medical need may exist where an inmate experiences a condition that is important or worthy of comment or treatment). Accordingly, the relevant inquiry is whether defendants Laurent, Greenwood and Jane Doe were deliberately indifferent to such need.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. *See Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Farmer*, 511 U.S. at 840-42).

### Defendant Laurent

The plaintiff avers that defendant Laurent violated his constitutional right to receive adequate medical care because she gave him only a cool towel for his burns and because he had to wait approximately three and a half hours to see a nurse. It is undisputed that defendant Laurent reported to the plaintiff's cell door in the early morning hours of

December 15, 2004. At that point, staff informed defendant Laurent, who is not a medical professional, that the plaintiff's shirt was torn and that he had a patch of skin on his face and skin that was starting to blister.

The plaintiff was taken to the Rotunda, while defendant Laurent called the on-call nurse at home. The plaintiff was then taken to segregation, where he was strip searched for security reasons. After he removed his shirt, the plaintiff saw blisters and peeling skin on his face, neck, chest and stomach. Thus, the plaintiff asked to have defendant Laurent come and look at his injuries.

Defendant Laurent came to see the plaintiff's injuries, but did not see blisters on the plaintiff's body. However, defendant Laurent observed that the plaintiff's shirt had been torn and wet. Therefore, she called the nurse again and informed her that the plaintiff had been injured and that he had a reddened area on his chest and possible blistering. The nurse instructed defendant Laurent to give the plaintiff cool towels and aspirin.

At 6:00a.m., the plaintiff was seen by a nurse, who gave him creme and aspirin. Then, at approximately 8:00a.m., the plaintiff saw the doctor, who pulled away the blistered skin, applied creme and bandages and gave the plaintiff something for pain.

Prison officials without medical training are not deliberately indifferent to a serious medical need where they consult with medical personnel to ensure that those officials are monitoring and addressing the prisoner's medical conditions. *See Johnson v. Doughty*, 433 F.3d 1001, 1010-1012 (7th Cir. 2006). Far from turning a blind eye to the plaintiff's

complaints of pain and possible blistering, defendant Laurent sought out the advice of medical personnel, who were not onsite in the early morning hours of December 15, 2004. Defendant Laurent contacted the on-call nurse twice and deferred to her judgment. The plaintiff has not submitted any admissible evidence that his requests for medical care or to see defendant Laurent were denied. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)("Perhaps it would be a different matter if the non-medical prison official had ignored the plaintiff's complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to medical providers who could be expected to address the plaintiff's concerns.")(internal citations omitted).

Although there was a three and a half hour delay between time the plaintiff was taken to segregation and the time he was first seen by a nurse, this was because the nurse was not onsite, not because of any deliberate indifference on defendant Laurent's part. *See,e.g., O'Malley v. Litscher*, 465 F.3d 799 (7th Cir. 2006)(holding that half-hour delay in wiping vomit from the plaintiff's back was not deliberate indifference because it was due to a shift change, not a disregard of the plaintiff's condition). And, there is no indication that the plaintiff's injuries were so obvious that defendant Laurent, who is not a medical professional, should have known whether he required any additional treatment. *See Higgins v. Corr. Med. Servs. of Illinois, Inc.*, 178 F.3d 503, 511 (7th Cir. 1999). Therefore, defendant Laurent is entitled to summary judgment on this claim.

23

**Defendants Hertel and Jane Doe**

The plaintiff has alleged that defendants Hertel and Jane Doe, who work in the HSU, violated his constitutional right to adequate medical care. The nature of the plaintiff's claims against these defendants is unclear. With respect to defendant Hertel, the plaintiff has alleged only that she was in the room when he was examined by a doctor at 8:00a.m. on December 15, 2004. As to defendant Jane Doe, the plaintiff claims that defendant Laurent called her to ask how to treat the plaintiff's burns.

By order dated February 16, 2006, the court construed the plaintiff's medical care claims to include defendants Greenwood and Jane Doe. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)(at screening, the court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction). However, to *prove* liability under 42 U.S.C. § 1983, a plaintiff must establish that each defendant was in some way personally responsible for the alleged deprivations, and that the deprivations occurred with the knowledge and consent of that defendant. *See Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994)(emphasis added); *Smith v. Rowe*, 761 F.2d 360, 368-69 (7th Cir. 1985). An official is personally involved if: a) he or she participates directly in the constitutional deprivation, b) acts or fails to act with reckless disregard of the plaintiff's constitutional rights, or c) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his or her knowledge and consent. *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986).; *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Section 1983, does

not create a claim based on collective or vicarious responsibility. *See Pacelli v. deVito*, 972 F.2d 871, 875 (7th Cir. 1992).

In the present case, the plaintiff does not assert that defendants Greenwood and Hertel participated in any constitutional deprivation. Rather, it appears that the plaintiff believes that these defendants are liable under § 1983 because they acted in concert with the other defendants. As discussed, § 1983 does not recognize claims based on vicarious responsibility. Morever, the court has determined that the plaintiff's Eighth Amendment right to adequate medical care was not violated. Thus, defendants Greenwood and Jane Doe are entitled to summary judgment as to these claims.

As a final matter, the defendants assert that they are entitled to qualified immunity. However, when a court determines in a § 1983 case that no constitutional violation occurred, it is unnecessary to consider whether defendants are entitled to qualified immunity. *Phillips v. City of Milwaukee,* 123 F.3d 586, 597(7th Cir. 1997)(citing *Kraushaar v. Flanigan,* 45 F.3d 1040, 1049 n. 4 (7th Cir. 1995)). For the reasons stated herein, the defendants' motion for summary judgment will be granted.

**IT IS THEREFORE ORDERED** that the defendants' motion for extension of time (Docket # 91) is **granted.**

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket # 44) is **denied.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

25

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of February, 2008.

**SO ORDERED,**


**s/ Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**

26